IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. S1-4:23CR000316 JAR |
| v. ) | |
| ) | |
| DIRELL ALEXANDER, ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT'S FIRST AMENDED TRIAL BRIEF

COMES NOW the United States of America, by Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Christine Krug, Assistant United States Attorney for said District, and submits the following trial brief in connection with the trial of the above-styled matter.

INTRODUCTION & BACKGROUND

This brief is intended as a general guide for the Court. It is not intended as a comprehensive statement of the Government's case, nor is it intended to be in the nature of a bill of particulars that would fix, bind, or in any way limit the Government to a set theory of proof.

SUMMARY OF PROCEEDINGS TO DATE

On June 21, 2023, Direll Alexander ("Alexander") was charged by Indictment with one count of Deprivation of Rights Under Color of Law in violation of Title 18, United States Code, Section 242. The defendant was arraigned on the Indictment on June 23, 2023. The defendant was charged by Superseding Indictment on October 30, 2024 with Deprivation of Rights Under Color of Law in violation of Title 18, United States Code, Section 242, Falsifying a Document in

1

violation of Title 18, United States Code, Section 1519, and Tampering with a Witness in violation of Title 18, United States Code, Section 1512

The defendant has filed no pre-trial motions attacking the charges or seeking to suppress any evidence. The case is scheduled for trial on Tuesday, March 18, 2025.

## FACTUAL BACKGROUND

To aid the Court in understanding this matter, in the paragraphs that follow, the Government attempts to summarize some, but not all, of the evidence it expects to present at trial.

Defendant Alexander is charged with depriving victim O.R. of his right to be free from unreasonable seizure and thus the right to be free from unreasonable force by a government actor. The charge specifically relates to defendant Alexander in his capacity as a corrections officer for the City of St. Louis at the City Justice Center ("CJC") in connection with the defendant's encounter with victim O.R. in the CJC while O.R. was in the custody of the CJC.

On the afternoon of March 5, 2023, victim O.R. was arrested in the City of St. Louis. After being taken to Central Patrol, he was delivered to CJC for booking. Almost 24 hours later, victim O.R. requested medical attention due to having a bad headache. The defendant was on-duty and assigned to the area in which victim O.R. was being held. The defendant initially told victim O.R. that he could not go to the medical unit, but later opened the holding cell door, handcuffed victim O.R. behind his back, and started walking with him towards the medical unit. This, and the subsequent actions described herein are captured on video from the CJC.[1] The walk from the holding cell to the medical unit takes approximately three to four minutes. The defendant and victim O.R. are seen exchanging words during the walk. Their body language indicates that some

---

[1] There is no audio, only video.

2

of the exchanges are calm, while others appear more agitated. When the defendant and victim O.R. were outside the sliding door to the hall leading to the medical unit, victim O.R.'s hand came out of his handcuffs, and he raised his hands up in the air. At that time, a deputy sheriff who was feet away heard what was going on, grabbed victim O.R. around the waist, and put him back in the handcuffs behind his back.

The defendant grabbed victim O.R.'s arm and walked him down the short hall to the medical unit. Once inside the medical unit, victim O.R. can be seen twisting in the defendant's grasp. The defendant and victim O.R. separate and the defendant sprayed a burst of Oleoresin Capsicum ("OC") spray from the canister he carried into victim O.R.'s face. Victim O.R. then turned away from the defendant and the defendant reached up and sprayed victim O.R. with the OC spray in his face a second time. Almost everyone who was in the medical unit had to leave because of the spray.

After the second burst of OC spray, victim O.R. bent over and the defendant grabbed him near his collar and forced him to the ground on his stomach, all while victim O.R. remained handcuffed behind his back. As soon as he put victim O.R. on the ground, the defendant immediately put his knee in the middle of his back. The victim's feet are seen kicking the ground. About 20 seconds after putting his knee in victim O.R.'s back, the defendant removed his right hand from the wall, grabbed the back of his neck, and forced victim O.R.'s head down to the ground. Within 30 seconds, victim O.R.'s legs and feet stopped moving. A few seconds later, the defendant stood up, reached down, picked victim O.R. up by the back of his clothing, carried him over to a chair and dropped him across it on his stomach. About 30 seconds later, victim O.R. slid off of the chair onto his knees and was then able to stand up and sit properly on the chair. The defendant continued to get in his face, and they continued to verbally interact while victim O.R.

3

was dealing with pain from the assault as well as the effects of the OC spray. The defendant took victim O.R. to an exam room to wash the OC spray from his face. The victim was interviewed by a corrections supervisor shortly thereafter. Following review of the video, the Federal Bureau of Investigation was contacted to investigate the incident.

The case was set for trial on September 17, 2024. On September 9, 2024, counsel for the defendant provided the Government with discovery that included an internal written statement ("informative") from a witness (S.B.) who had initially provided an informative to the CJC command staff for the internal investigation in March of 2023. The informative provided by defense counsel was dated September 2, 2024 and was considerably different than the one originally provided to the CJC. The Government met with witness S.B. who advised that she had written a new informative dated September 2, 2024 after being served with a trial subpoena and reflecting on the incident, for her own use. When shown the written statement provided by defense counsel dated September 2, 2024, S.B. advised that it was different than what she had written and then provided what she had actually written to the Government. Further investigation revealed that on September 3, 2024 the defendant e-mailed the revised version to his attorney with a message stating "attached is the revised version of the report previously submitted Please accept and use as it supports exactly what I've said She said it all happened so fast that some details became murky. but she wanted to set the record straight as to what she observed." The Government subsequently provided the actual document written by S.B. to defense counsel. It was then determined that defense counsel had a non-waivable conflict with the representation of the defendant, causing the trial to be continued so that the defendant could retain a different attorney and the parties could investigate the new information. A superseding indictment adding charges for falsification of a record and witness tampering on October 30, 2024. The case is currently set for trial on Tuesday,

4

March 18, 2025.

LEGAL MATTERS

In the following sections, the Government summarizes certain legal matters that may arise prior to or during the trial of this case. The Government addresses these matters now, in order to assist the Court and to identify possible issues to defense counsel prior to trial so that counsel may respond and the Court may rule. The Government does not, however, attempt to address every legal matter that may arise.

I.   ELEMENTS OF DEPRIVATION OF CIVIL RIGHTS

The defendant is charged with violating 18 U.S.C. § 242, which subjects to criminal punishment anyone who, "under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . ." 18 U.S.C. § 242. To prove a violation of section 242, the Government must establish that the defendant (1) willfully and (2) under color of law (3) subjected another person to the deprivation of any right secured or protected by the Constitution or federal law and (4) bodily injury resulted. Id.; United States v. Lanier, 520 U.S. 259, 264 (1997); United States v. Fleming, 526 F.2d 191, 192 (8th Cir. 1975).

*A. Willfulness*

A "willful" act is one committed either "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." Screws v. United States, 325 U.S. 91, 105 (1945); see also U.S. v. Reese, 2 F.3d 870, 881 (9th Cir. 1993) (intentionally wrongful conduct that "contravenes a right definitely established in law, evidences a reckless disregard for that right, [which], in turn, is the legal equivalent of willfulness."); see also United

5

States v. Johnstone, 107 F.3d 200, 208 (3d Cir. 1997) ("[W]illfulness includes reckless disregard."). "In simpler terms, 'willful[]' in § 242 means either particular purpose or reckless disregard. Therefore, it is enough to trigger § 242 liability if it can be proved-by circumstantial evidence or otherwise-that a defendant exhibited reckless disregard for a constitutional or federal right." United States v. Thao, 76 4th 773 (8th Cir. 2023), citing Johnstone at 208-209.

Although the Government must establish that the defendant acted with the specific intent to deprive a person of a federal right, it need not prove that the defendant was thinking in constitutional terms. Screws, 325 U.S. at 106 ("The fact that the defendants may not have been thinking in constitutional terms is not material where their aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution."). Rather, the willfulness element of 18 U.S.C. § 242 simply requires that the defendant know that his actions are wrong and against the law but that he chose to act anyway.

*B. Color of Law*

Under § 242, a defendant acts under color of law when he is an official or employee of a federal, state, or local government and uses or abuses the power he possesses by virtue of law—even if his actions violate state law or exceed his lawful authority. West v. Atkins, 487 U.S. 42, 49 (1988); Griffin v. Maryland, 378 U.S. 130, 135 (1964); Williams v. United States, 341 U.S. 97, 99-100 (1951); United States v. Classic, 313 U.S. 299, 326 (1941). Put another way, an officer acts under color of law when he acts "under pretense of law." Screws, 325 U.S. at 111.

*C. Deprivation of a Protected Right*

The Fourth Amendment of the United States Constitution's protection against unreasonable search and seizures requires that officers refrain from using excessive force, that is more force than is reasonably necessary. United States v. Brugman, 364 F.3d 613, 616 (5th Cir.

6

2004). The proper application of the test of reasonableness demands careful attention to the facts and circumstances of each individual case. Consideration of the severity of the crime, whether the suspect is an immediate threat to anyone, and whether the suspect is actively resisting arrest or fleeing from the arrest should determine if the use of force is unreasonable. Graham v. Connor, 490 U.S. 386, 396 (1989).

*D. Bodily Injury*

While 18 U.S.C. §242 does not define "bodily injury," the term is defined identically in four other provisions of Title 18[2]. In each of them, "bodily injury" is defined as "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of [a/the] function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." Several other circuits have recognized this definition. United States v. Wilson, 344 Fed.Appx. 134, 142 (6th Cir. 2009), citing United States v. Perkins, 470 F.3d 150, 161 (4th Cir.2006). See also, United States v. Gonzales, 436 F.3d 560, 575 (5th Cir.2006); United States v. Bailey, 405 F.3d 102, 111 (1st Cir.2005); United States v. Myers, 972 F.2d 1566, 1572 (11th Cir.1992).

II. ELEMENTS OF ALTERATION OF A DOCUMENT IN A FEDERAL INVESTIGATION

The defendant is charged with violating 18 U.S.C. § 1519, which subjects to criminal punishment anyone who, "...knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. . . ." 18 U.S.C. § 1519. To prove a

---

[2] 18 U.S.C. § 831(f)(5) § 1365(g)(4), § 1515(a)(5), § 1864(d)(2).

violation of section 1519, the Government must establish that the defendant (1) knowingly falsified a document (2) did so with the intent to impede, obstruct, or influence, an investigation or proper administration of a matter under color of law and (3) the investigation or matter was within the jurisdiction of the federal bureau of investigation, which is an agency of the United States.

III. ELEMENTS OF TAMPERING WITH A WITNESS

The defendant is charged with violating 18 U.S.C. § 1512(b)(2)(B) which subjects to criminal punishment anyone who, "…knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to…alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding. . . ." 18 U.S.C. § 1512(b)(2)(B). To prove a violation of section 1512(b)(2)(B), the Government must establish that the defendant (1) corruptly attempted to persuade another person to rely upon a falsified document and (2) did so with the intent to impair the integrity or availability of said document for use in an official proceeding.

IV. SELF-AUTHENTICATING BUSINESS RECORDS

The Government intends to introduce video surveillance evidence from the CJC which has been authenticated by certification of the Custodian of Records at CJC. Federal Rule of Evidence 902 permits business records and records or data generated by an electronic system or copied from an electronic system to be introduced without the testimony of a custodian of records so long as a certificate accompanying the records certifies that it was: (1) made at or near the time of the occurrence by a person with knowledge; (2) kept in the course of the regularly conducted activity; and (3) made by the regularly conducted activity as a regular practice. The record and the declaration must be made available to the defendants for inspection. Fed.R.Evid. 902(11),(13), and

(14); *Shelton v. Consumer Products Safety Comm'n*, 277 F.3d 998, 1009 (8th Cir. 2002), *cert. denied*, 537 U.S. 1000 (2002).

The recorded surveillance videos from the CJC are certified domestic records of regularly conducted activity, certified records generated by an electronic process or system, and/or certified data copied from an electronic device, storage medium, or file by the correctional facility and are admissible under 902(11), 902(13), and/or 902(14).

Respectfully submitted,

SAYLER A. FLEMING
UNITED STATES ATTORNEY

*/s/ Christine H. Krug*
CHRISTINE H. KRUG #42586MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, MO  63102
Christine.Krug@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Robert Taaffe, Attorney for Defendant.

*/s/ Christine H. Krug*
CHRISTINE H. KRUG #42586MO